UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NEURY RIVERO MORERA,

      Petitioner,

v.                       Case No: 2:14-cv-416-FtM-29MRM

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

      Respondents.[1]

_____

## OPINION AND ORDER

This matter comes before the Court on a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Neury Rivero Morera("Petitioner"), a prisoner of the Florida Department of Corrections (Doc. 1, filed June 16, 2014). Petitioner, proceeding *pro se*, attacks the convictions and sentences entered against him by the Twentieth Judicial Circuit Court in Collier County, Florida for trafficking in more than twenty-five pounds of marijuana and possession of drug paraphernalia. Id. Respondent filed a response to the petition (Doc. 19). Despite being granted an extension of

_____

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004) (citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

time to do so, Petitioner filed no reply, and the matter is now ripe for review.

Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be dismissed or denied.  Because the petition is resolved on the record, an evidentiary hearing is not warranted.  See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.   Background and Procedural History[2]

On July 27, 2007, the state charged Petitioner by amended information with trafficking in more than twenty-five pounds of cannabis, in violation of Florida Statute §§ 893.135(1)(a) and 777.011 and possession of drug paraphernalia, in violation of Florida Statute § 893.147 (Ex. 1).  A jury found Petitioner guilty as charged, and he was sentenced to fifteen years in prison (Ex. 4; Ex. 5; Ex. 24).

Prior to trial, Petitioner filed a motion to suppress in which he urged that the search of the "grow-house" where he and the marijuana was found was illegal because, although he (Petitioner) consented to the search of the grow-house, he did not have

---

[2] Unless otherwise indicated, citations to exhibits are to those filed by Respondent on September 11, 2014 (Doc. 21). Citations to the trial transcript, located in Exhibit 24, will be cited as (T. at __).

authority to do so (Ex. 4).   Following a hearing (Ex. 23), the motion to suppress was denied on the ground that Petitioner lacked standing to proceed (Ex. 4).   On direct appeal, Petitioner objected to the denial of his motion to suppress, arguing that the trial court should not have rejected the motion without first considering the substantive Fourth Amendment issues raised in the motion (Ex. 7).   Florida's Second District Court of Appeal affirmed the conviction (Ex. 10).

On May 18, 2009, Petitioner filed a motion pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") raising nine claims of ineffective assistance of counsel (Ex. 12).   The post-conviction court granted an evidentiary hearing on three of the ineffective assistance claims and summarily denied the other claims (Ex. 14).   After an evidentiary hearing at which Petitioner and his trial counsel testified (Ex. 25), Petitioner's remaining claims were denied (Ex. 15).   Florida's Second District Court of Appeal affirmed (Ex. 20).

Petitioner filed a federal habeas petition in this Court on June 16, 2014 (Doc. 1).

## II.  <u>Legal Standards</u>

### a.   The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  White v. Woodall, 134 S. Ct. 1697, 1702 (2014).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Notably, a state court's violation of state law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." Marshall v. Rodgers, 133 S. Ct. 1446,

1449 (2013) (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)).  State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case." <u>White</u>, 134 S. Ct. at 1706 (quoting <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. <u>Ward v. Hall</u>, 592 F.3d 1144, 1155 (11th Cir. 2010); <u>Mitchell v. Esparza</u>, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, <u>Brown v. Payton</u>, 544 U.S. 133, 134 (2005); <u>Bottoson v. Moore</u>, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context

where it should apply." <u>Bottoson</u>, 234 F.3d at 531 (quoting <u>Williams</u>, 529 U.S. at 406).   The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>White</u>, 134 S. Ct. at 1702 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." <u>Knowles</u>, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding") (dictum); <u>Burt v. Titlow</u>, 134 S. Ct. 10, 15-16 (2013) (same).

### b.   Ineffective Assistance of Counsel

In <u>Strickland v. Washington</u>, the Supreme Court established a two-part test for determining whether a convicted person is

entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).   A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.  Id.   This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13 (citing Cullen v. Pinholster, 563 U.S. 170 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.   In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689.   Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington

v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

### III. Analysis

Petitioner raises ten claims in his amended petition.  He asserts that: (1) the trial court erred when it denied his motion to suppress; and (2) defense counsel ("Counsel") was ineffective for: (a) failing to object to the admissibility of evidence seized from Petitioner's vehicle; (b) failing to depose the state's witnesses prior to trial; (c) not knowing about PH Down (fertilizer) evidence seized from Petitioner's car; (d) failing to effectively cross examine state witness Investigator Morgan Rogers; (e) failing to move to exclude "common criminal conduct" testimony by law enforcement; (f) failing to move for a judgment of acquittal; (g) failing to request jury instructions on the affirmative defense of lack of knowledge; (h) failing to request a "Defendant's Statements" cautionary instruction; and (i) failing to move for a mistrial based on the prosecutor's closing

arguments (Doc. 1).   In a footnote, Petitioner raises an additional claim of cumulative error. Id. at 24 n.1.   Each claim will be addressed separately.

### a.   Claim One

Petitioner asserts that the trial court erred when it denied his motion to suppress the evidence seized from the marijuana grow-house on the ground that he (Petitioner) lacked standing to object to the police officers' warrantless search of somebody else's home without first hearing evidence or ruling on the merits of the defense motion (Doc. 1 at 6).   In his pre-trial motion to suppress the evidence seized from the marijuana grow-house, Petitioner explained the facts surrounding his arrest as follows:

> Before [Petitioner's] arrest, on February 26, 2007, Inv. Rogers and Vice/Narcotics received information from an anonymous caller that the residence at 490 14th Ave. NE was being used as a marijuana grow house.
>
> Inv. Rogers conducted a property records check and discovered that the residence was owned by a Zayli Perez . . . and on February 26, 2007 conduced surveillance of said property and smelled marijuana coming from the garage area and heard multiple air conditioner units operating from the rear of the residence.
>
> Inv. Rogers continued his surveillance on March 1, 2007, March 6, 2007, and March 28, 2007.   The surveillance on such dates indicated the same results as the original search on February 26, 2007.
>
> On March 29, 2007, Inv. Rogers and Inv. Gaydash knocked on the front door of the residence.   A Hispanic male, the Defendant, later identified as Neury Rivero Morera,

opened the door. Inv. Rogers told the
Defendant that the Sheriff's Office had reason
to believe that the residence was being used
as a marijuana grow house and then asked the
Defendant if he would allow the investigators
into the house; the Defendant granted them
access. The investigators further asked the
Defendant if they could check the residence to
see if anyone else was in the home.

Upon such search, they found growing marijuana
plants in two (2) rooms.

The Defendant was then placed under arrest and
Inv. Rogers applied for a search warrant which
was signed by Judge Carr.

(Ex. 4 at 1-2).

In his motion to suppress, Petitioner admitted that he
consented to the search of the grow-house, but argued that the
search was nonetheless illegal because he had no authority to
consent to the police's entry to a house he did not own. Id. at
3. A hearing was held on the motion to suppress, and the trial
court determined that, from the face of the motion, it was clear
that Plaintiff did not own the grow-house, was not an overnight
guest at the grow-house, and had no possessions in the grow-house
(Ex. 23 at 5-6). The trial court concluded that Petitioner lacked
standing to object to the warrantless search of someone else's
house, and the motion to suppress was denied (Ex. 23).

On direct appeal, Petitioner argued that the trial court erred
by determining that Petitioner lacked standing to object to the
search without any record evidence to support that determination
(Ex. 6) (citing Andrews v. State, 536 So. 2d 1108 (Fla. 4th DCA

1988)).   Florida's Second District Court of Appeal affirmed the trial court's denial of the motion to suppress (Ex. 10).

Petitioner's assertion that the trial court erred under Florida law by making its ruling on the motion to suppress without developing adequate record evidence on standing fails on habeas review.  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991); see also 28 U.S.C. § 2254(a).  Petitioner does not explain how the state courts' rejection of this claim violated the United States Constitution or federal law.  To the contrary, federal law supports the state courts' rejection of Claim One.

In United States v. Salvucci, 448 U.S. 83 (1980), the Supreme Court held that evidence seized during a search should be suppressed only if a defendant proves that his own Fourth Amendment rights were violated during the search. Id. at 85 (overruling the "automatic standing" rule of Jones v. United States, 362 U.S. 257 (1960), under which any person charged with a possessory offense could challenge the search in which the incriminating evidence was obtained, and limiting such Fourth Amendment claims to those persons who had a reasonable expectation of privacy in the area or object of the search).  The Salvucci Court also reaffirmed the principle that, in order to challenge a search on Fourth Amendment grounds, a defendant bears the burden of demonstrating that he had

a legitimate expectation of privacy in the place searched. Id. at 95; see also Rawlings v. Kentucky, 448 U.S. 98, 104 (1980) (defendant has the burden of establishing that the search violated his legitimate expectation of privacy in a particular place).

Petitioner has not shown that he had a legitimate expectation of privacy in the grow-house. In fact, the argument in his suppression motion is based on the contention that he could not have consented to the search of the grow-house because he had no expectation of privacy therein. Accordingly, the trial court's denial of his suppression motion was not contrary to Salvucci, Rawlings, or any other clearly established federal law.[3]

Because the state courts' adjudication of this claim did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," Petitioner is not entitled to federal habeas corpus relief on Claim One. Therefore, the claim is denied under 28 U.S.C. § 2254(d)(1).

---

[3] Even assuming that Petitioner did have an expectation of privacy in the grow-house because he had authority over the area (an argument not made in the instant petition), it is undisputed that Petitioner consented to the search of the grow-house, and such consent defeats this claim. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) ("It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."); Illinois v. Rodriguez, 497 U.S. 177 (1990) (recognizing a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area).

b.    Claim Two

Petitioner asserts that Counsel was ineffective for failing to argue that he (Petitioner) had standing to object to the search of the grow-house because "evidence was seized from both Defendant's vehicle and person during search of residence, such would have established standing and entitled Defendant to [sic] opportunity to present evidence and be heard on merits of illegal search claim." (Doc. 1 at 12).   Petitioner raised this issue in his Rule 3.850 motion and the post-conviction court denied the claim as follows:

> Defendant alleges that counsel was ineffective for overlooking and failing to present determinative facts establishing his standing to challenge the search of the house for purposes of a motion to suppress. Specifically, Defendant asserts that the motion to suppress was deficient in that it did not address his privacy interest in his person and his vehicle, which were included in the search.
>
> The State argues in its Response that Defendant fails to set forth a valid basis upon which counsel could have moved to suppress the evidence.   Defendant's person and vehicle were searched pursuant to the warrant, not upon consent.   Defendant's "only claim to the warrant," the State continues, "is that 'no valid consent has been obtained for law enforcement's initial entry into the residence.'"  The State then points out that this claim was the very one that counsel submitted in his motion to suppress.
>
> The transcript of the suppression hearing reflects that counsel did not intend to challenge the warrant, but to challenge the initial entry of the police.   This would seem

to be in accord with Defendant's current claim
that the challenge is to the initial entry and
not the warrant.   Defendant has failed to
establish how counsel was ineffective within
the meaning of Strickland.

(Ex. 14 at 3-4) (internal citation to the record omitted).
Florida's Second District Court of Appeal affirmed (Ex. 20). A
review of the record and applicable law supports the state courts'
findings.

In his motion to suppress, Petitioner asserted that after he
consented to the police officers' search of the grow-house, the
police found growing marijuana plants therein and immediately
applied for a search warrant for the house, its curtilage and
premises, and any vehicle found therein (Ex. 3 at 2).   The
testimony presented at trial demonstrated that the police briefly
searched only the grow-house before they stopped the search and
applied for a search warrant (T. at 170, 216).   The search warrant
allowed the police to search the grow-house, the premises and
curtilage, and any vehicles therein (Ex. 2).   Because the search
of Petitioner's car was pursuant to a valid search warrant,
reasonable competent counsel could have decided against
challenging the search of Petitioner's car in the motion to
suppress. See Brownlee v. Haley, 306 F.3d 1043, 1066 (111th Cir.
2002) (counsel is not ineffective for failing to raise issues that
"clearly lack merit.").   Claim Two fails to satisfy Strickland's
performance prong, and is denied pursuant to 28 U.S.C. § 2254(d).

### c.   Claim Three and Claim Four

In Claim Three, Petitioner asserts that Counsel was ineffective for failing to adequately investigate the case and prepare a defense (Doc. 1 at 17). Specifically, Petitioner urges that Counsel should have deposed the witnesses against him, and had he done so, he would have realized that incriminating evidence was found in Petitioner's car. In Claim Four, Petitioner asserts that Counsel was ineffective for failing to learn before trial that the police had found a bottle of pH Down, a soil treatment used to lower the pH of soil and "essential in the cultivation of marijuana" (T. at 203), in the trunk of Petitioner's car. Id. at 25. Petitioner asserts that, had he known the police found the pH Down in his car, he may have accepted the state's earlier plea offer of three years in prison. Id. at 21-23, 26-28.

Petitioner raised these claims in his Rule 3.850 motion, and the post-conviction court denied Claim Three as conclusively refuted by the record:

> Defendant alleges that counsel "unconstitutionally abdicated representation of Defendant, forcing involuntary self-representation, in [the] matter of investigation of [the] case and preparation of [the defense]. To support this claim, Defendant sites to the following passage in the trial transcript:
>
> > [Defense Counsel]: Okay. What the Judge is trying to tell you . . . [is] do you want me to talk with the investigators to dig a little deeper

in case something that they're gonna say is not in those papers?"

[Defendant]: You're the attorney. You're the one who's gonna make that decision.

[Defense Counsel]: Well, right now the Judge wants you to make that decision[.]

[The Court]: Your attorney can't make that decision.

[Defense Counsel]: It's a right that you have.

However, as the record reveals, this is not an example of an attorney abdicating his responsibility to represent his client, but that of the court attempting to protect Defendant's rights. Copies of the pertinent pages of the transcript are attached hereto. This passage is preceded in the transcript by an exchange in which the trial court is informed that no discovery had been done prior to trial.

To the extent that Defendant claims that he was forced in to proceeding to trial without having deposed the witnesses, the record reflects that Defendant was specifically informed of this right and asked if wished to have depositions taken. Defendant responded that he didn't "have a problem" with the fact that he would not know what the witnesses were going to say until he heard them in open court.

The Florida Supreme Court has held that "[i]f the matter forming the basis of a motion to vacate was known to the defendant at the time of trial, it will not support a collateral attack on the judgment of conviction." State v. Matera, 266 So. 2d 661, 666 (Fla. 1972). Defendant knew at the time of trial that he had the right to depose the witnesses and he chose not to. He cannot now claim that his decision not to depose the witnesses is a

> result of counsel's ineffective
> representation. Ground 1, therefore, will be
> **DENIED** as conclusively refuted by the law and
> the record.

(Ex. 14 at 2-3) (internal citations to the record omitted, alterations in original). The post-conviction court further found that "had [Petitioner] exercised his right to depose the witnesses prior to trial, he would have learned [of the pH Down found in his car] and could have better assessed the strength of his case." Id. at 3. The post-conviction court denied Claim Four "for the same reasons as outlined" in its rejection of Claim Three. Id. The post-conviction court's rejections of Claims Three and Four were affirmed by Florida's Second District Court of Appeal (Ex. 20). A review of the record and applicable law supports the state courts' findings.

Prior to the beginning of trial, the state attorney informed the trial court that Petitioner's desire to "fast track" his case resulted in no discovery being conducted in his case (T. at 6-7). The trial court expressed concern over Petitioner's desire to proceed to trial too quickly:

> COURT:        Now, why is that a concern to
>               me? I guess I'm gonna tell your
>               client, Mr. Morera this. If you
>               are found not guilty, we don't
>               have to worry. If you're found
>               guilty, Mr. Morera, every day,
>               almost every day and sometimes
>               more often than every day, I get
>               letters from people in state
>               prison telling me about all the

complaints that things didn't happen that should have.

One of my common complaints is that my lawyer did not do what they should have done. If they would have, I wouldn't be found guilty. I'm gonna give you an example of what they say sometimes my lawyer didn't do. My lawyer did not go out and talk to all the witnesses and get a record of what all the witnesses had to say because you're allowed to do that. Instead we went straight to trial not knowing what they were going to say under oath. Do you understand that?

PETITIONER:    Yes.

COURT:    In this case your lawyer, they tell me, no one's taken any depositions of which they're entitled to in a felony charge like this. Depositions are where they talk to the witnesses under oath way before trial to see what they're really going to say or not say. Do you understand that?

PETITIONER:    Yes.

COURT:    Did you know you had the right to have depositions taken of all the witnesses against you?

PETITIONER:    Yes.

COURT:    But you chose – you don't want the depositions taken? You want them just to come in and testify in front of you for the first time?

PETITIONER:    Sure, yes.

(T. at 8-9).  It is clear from the trial transcript that Petitioner wished to exercise his speedy trial rights, and Petitioner does not now explain how Counsel could have taken additional steps to delay proceeding to trial in order to depose witnesses.  Further, foregoing discovery in exchange for a speedy trial may be considered a sound trial strategy.  See Landry v. State, 666 So. 2d 121, 128 (Fla. 1995) ("There is no question that there are legitimate strategic reasons why a defendant might wish to forego discovery in exchange for a speedy trial.").  Counsel cannot be adjudged incompetent for performing in a particular way in a case as long as the approach taken may be considered sound trial strategy. Darden v. Wainwright, 477 U.S. 168 (1986).  Therefore, Petitioner has not satisfied the prejudice prong of Strickland's ineffectiveness test.

Moreover, Counsel testified at the evidentiary hearing on Petitioner's Rule 3.850 motion that he reviewed the state's evidence, including photographs showing the pH Down in Petitioner's car, with Petitioner prior to the trial (Ex. 25 at 37-38).  Counsel testified that his defense strategy "was to tie [Petitioner's] testimony as to how the pH Down may have gotten in his vehicle because the understanding was that originally he came [to the grow-house with four other people] in two different vehicles. . . [and Counsel] could have put something in the minds of the jury saying that these people [in the other car] planted

[the pH Down] in [Petitioner's] car[.]" Id. at 36.  Accordingly,
Petitioner knew of the pH Down found in the trunk of his car prior
to trial through Counsel and the pictures of the evidence.
Petitioner could not have based his decision to reject the state's
plea offer on the lack of pH Down evidence, and he did not suffer
prejudice from his attorney's failure to separately learn of the
pH Down's presence through depositions.

Claims Three and Four fail to satisfy either prong of
Strickland's ineffectiveness test, and the claims are denied
pursuant to 28 U.S.C. § 2254(d).

### d.    Claim Five

Petitioner asserts that Counsel was ineffective for failing
to cross-examine Collier County Sheriff's Office Investigator
Morgan Rogers as to why the bottle of pH Down, which was shown in
photographs taken of Petitioner's car and discussed at trial, was
not listed in his Search Warrant Return or the inventory of items
found in Petitioner's vehicle (Doc. 1 at 29).  Petitioner raised
this claim in his Rule 3.850 motion, and after holding an
evidentiary hearing, the post-conviction court denied the claim as
follows:

> Defendant asserts that trial counsel was
> ineffective for failing to effectively cross-
> examine a law enforcement officer as to the
> lack of documentation of a piece of physical
> evidence found in Defendant's vehicle –
> namely, pH Down, which is a type of chemical
> used to maintain the proper pH level in the
> fertilizer associated with marijuana grow

operations.  [This claim] is in reference to State's Exhibit 5 introduced at trial: a photograph of the pH Down located in Defendant's vehicle which was parked in the driveway of the residence discovered to be a marijuana grow house.

At the evidentiary hearing, Defendant testified that the pH Down allegedly found in his trunk, but not listed on any of the law enforcement evidence inventory lists, was Defendant's only connection with the marijuana grow house.  Defendant further testified that he did not have any keys to the house.  At the evidentiary hearing, Defendant's former trial counsel, Mr. Gordon, testified that the marijuana grow house was not even a façade for a residential home but that it was only being used to grow marijuana plants.  Mr. Gordon testified that keys were required to gain access to each of the bedrooms in the residence.  Mr. Gordon testified that just because the pH Down was not listed on the law enforcement inventory list didn't mean it wasn't found in his car.  Mr. Gordon testified that he did not ask Investigator Morgan Rogers about the pH Down not being on the inventory list during cross-examination because he did not want the pH Down to be featured in front of the jury.  This Court finds trial counsel's recollection and testimony of the facts regarding the claims asserted by Defendant . . . to be far more credible than Defendant's recollection and testimony.

The record reflects that the pH Down found in Defendant's vehicle was not the only connection Defendant had to the marijuana grow house.  At the trial, Investigator Rogers and Investigator Steve Gaydash testified that Defendant's key chain had a key to the front door of the residence and keys to the other rooms inside the residence where the marijuana was being grown.  Additionally, the vehicle discovered in the driveway of the residence by law enforcement officers contained a vehicle registration form which established that Defendant was the owner of the vehicle; the

>       registration was introduced at trial as
>       State's Exhibit 9.
>
>       The Court finds that trial counsel's strategy
>       of not cross-examining law enforcement
>       officers regarding the absence of pH Down on
>       an inventory list in order to prevent it from
>       being featured in the minds of the jury was a
>       reasonable tactical decision in light of the
>       additional evidence connecting Defendant with
>       the marijuana grow house and introduced at
>       trial.  Furthermore, even assuming that trial
>       counsel was ineffective for failing to cross-
>       examine the law enforcement officers at trial
>       regarding the absence of the pH Down from any
>       of the inventory lists, the Court finds that
>       Defendant has failed to demonstrate the
>       deficient performance prejudiced the defense
>       within the meaning of Strickland.

(Ex. 15 at 3-5) (internal citations to the record omitted).
Florida's Second District Court of Appeal affirmed the post-
conviction court's rejection of this claim (Ex. 20).  A review of
the record and applicable law supports the state courts' findings.

At trial, Investigator Rogers testified that he discovered a
bottle of pH Down in Petitioner's car and that "[i]t's purchased
in hydroponics stores, and it's really used for serious people
involved in growing of different types of plants.  But we've
encountered it in growing in marijuana." (T. at 178-79).  Rogers
testified that it was "very common" to find pH Down in grow houses.
Id. at 79.  On cross examination, Counsel questioned Rogers
extensively as to the ownership of the grow-house, but he did not
question him as to why the inventory sheet of items removed from
Petitioner's car did not list the bottle of pH Down. Id. at 192-

205.  At the evidentiary hearing, Counsel explained that he did
not do so because he did not want to draw attention to Rogers'
testimony regarding the pH Down (Ex. 25 at 36).  The post-
conviction court specifically found Counsel's testimony in this
regard to be credible (Ex. 15 at 5).  Federal court have "no
license to redetermine the credibility of witnesses whose demeanor
has been observed by the state trial court, but not by them."
Marshall v. Lonberger, 459 U.S. 422, 434 (1983).

   The record shows that Counsel made a strategic decision not
to draw attention to Rogers' failure to list the pH Down on the
inventory sheet.  Counsel believed that cross examining Rogers on
this issue would have underscored the existence of the pH Down in
Petitioner's car.  The jug was visible in photographs taken during
the search of Petitioner's car, and, as noted by Counsel, "just
because it wasn't on an inventory sheet doesn't mean it didn't
exist." (Ex. 25 at 36).  Petitioner cannot demonstrate that no
reasonable attorney would have chosen to forego further
questioning of Rogers about the pH Down.  See Davis v. Singletary,
119 F.3d 1471, 1477 (11th Cir. 1997) (counsel not ineffective for
failing to impeach testimony of witness who had been hypnotized
because doing so "would have run the risk of bolstering that
witness' testimony in the eyes of the jury.").  The post-
conviction court reasonably determined that Counsel's performance
was not deficient.  Accordingly, Claim Five fails to satisfy the

first prong of <u>Strickland</u>'s ineffectiveness test, and the claim is dismissed under 28 U.S.C. § 2254(d).

### e.   Claim Six

Petitioner asserts that Counsel was ineffective for failing to object to impermissible "common criminal conduct" testimony from law enforcement officers (Doc. 1 at 32).   Specifically, he urges that Counsel should have objected to testimony that it was common to find pH Down fertilizer in grow houses; that key-locks on interior bedroom doors are uncommon in most residences; and that a typical grow-house operation will have different named individuals on each of the deed, lease, and utility bills. <u>Id.</u> at 32-34. Petitioner claims that the testimony of common criminal conduct was underscored in the state attorney's closing arguments. <u>Id.</u> at 35-36.   Petitioner submits that this testimony caused the jury to find him guilty. <u>Id.</u> at 37.

Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court recognized that testimony of "generalized common practices among drug dealers is not admissible as proof of guilt." (Ex. 14 at 4-5) (citing <u>Lawrence v. State</u>, 766 So. 2d 250, 251 (Fla. 4th DCA 2000)).   However, the post-conviction court concluded that Counsel had no grounds on which to object because the testimony was not of "generalized common practices," but of "what the officers found and how they recognized the house to be a grow house." <u>Id.</u>at 5.   Therefore,  concluded  the  court,

- 24 -

counsel had no reasonable basis on which to object. Id.  Florida's Second District Court of Appeal affirmed (Ex. 20).

Petitioner does not explain how the state courts' adjudication of Claim Six was contrary to, or an unreasonable application of, Strickland.  As noted by the post-conviction court, testimony about a defendants' general criminal behavior is not allowed at trial as substantive proof of guilt. See Dunning v. State, 695 So.2d 473, 474 (Fla. 4th DCA 1997) (holding that the admission of detective's testimony concerning general customs of drug dealers, specifically that it was not uncommon for dealers to keep drugs off their persons, was error).  However, the post-conviction court determined that the objected-to testimony did not fall within the purview of this prohibition because the testimony at issue merely explained what the police officers found and how they recognized the house to be a grow house (Ex. 14 at 5). Both the post-conviction court—and by its affirmance, the appellate court—determined that Florida law supported the testimony. Accordingly, Petitioner cannot demonstrate prejudice from Counsel's failure to object because the state courts have already told us how this issue would have been resolved had Counsel raised the arguments set forth in the instant habeas petition.  An objection would have been overruled.  It is "a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such

matters.'" <u>Herring v. Sec'y, Dep't of Corr.</u>, 397 F.3d 1338, 1355 (11th Cir. 2005) (quoting <u>Agan v. Vaughn</u>, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Moreover, the statements at issue were not so prejudicial as to "undermine confidence in the outcome" of Petitioner's trial. <u>Strickland</u>, 466 U.S. at 694.  Evidence was presented at trial that Petitioner was found in a house filled with more than two hundred marijuana plants, nineteen thousand-watt lightbulbs, nineteen transformers to power the lightbulbs, two separate air conditioner units in the 1700 square-foot house, and an inside irrigation system (T. at 170-8, 183).  It was noted that every room in the house, except for the garage, was used to grow marijuana plants, and that no room was being used as living space. <u>Id.</u> at 177. Petitioner's keyring contained keys to the front door of the house and to each locked bedroom of the house. <u>Id.</u> at 179-80. Petitioner's car contained a bottle of fertilizer of the type commonly used on marijuana plants. <u>Id.</u>  Petitioner was the only person in the house. <u>Id.</u>  Given the overwhelming evidence that Petitioner was involved in the operation of the grow-house, he has not met his burden of showing that the "common criminal conduct" testimony at trial deprived him of a fair trial.  Accordingly, Petitioner has not satisfied <u>Strickland</u>'s prejudice prong, and Claim Six is denied. 28 U.S.C. § 2254(d).

### f.   Claim Seven

Petitioner asserts that Counsel was ineffective for failing to move for a judgment of acquittal based on his (Petitioner's) lack of knowledge (Doc. 1 at 38-41).   Specifically, Petitioner claims that the state did not prove that he had knowledge of the illicit nature of the marijuana in the grow-house. Id. at 40. Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court denied it on the ground that Petitioner could not demonstrate Strickland prejudice because "the case was properly given to the jury to decide." (Ex. 14 at 5).   The Post-conviction court was affirmed by Florida's Fifth District Court of Appeal (Ex. 20).   A review of the record and applicable law supports the state courts' adjudication of this claim.

Under Florida law, a motion for judgment of acquittal is designed to challenge the legal sufficiency of the state's evidence. State v. Williams, 742 So. 2d 509, 510 (Fla. 1st DCA 1999). In moving for judgment of acquittal, a defendant admits not only the facts stated in the evidence, but also every reasonable conclusion favorable to the state that the fact finder might fairly infer from the evidence. Williams, 742 So. 2d at 510 (citing Lynch v. State, 293 So .2d 44, 45 (Fla. 1974)). If the state presents competent evidence to establish each element of the crime, a motion for judgment of acquittal should be denied. Id. at 510.   In other words, a trial court may not grant the motion for a judgment of acquittal unless the evidence, when

viewed in a light most favorable to the state, fails to establish a prima facie case of guilt. Id.

The trial court instructed the jury that to be found guilty of trafficking in marijuana, the state must prove that: (1) the defendant knowingly sold, delivered, or possessed a certain substance; (2) the substance was marijuana; (3) the quantity of marijuana involved exceeded twenty-five pounds; and (4) the defendant knew the substance was marijuana (T. at 275); State v. Dominguez, 509 So. 2d 917 (Fla. 1987); Fla. Stat. § 893.135(1)(a) (2007).[4]  The testimony presented at trial was that Petitioner was found alone in a house with eighty-four pounds of marijuana plants. The house was designed only to raise plants, and not as a residence.  Petitioner had keys to the house and to the individual rooms of the house on his keyring, which also contained keys to a car registered in Petitioner's name.  Petitioner asserts that he was merely taken to the house by unnamed friends in an inebriated state where he was left alone to sleep on the sofa, and that no evidence was presented to prove that he knew the plants in the

---

[4] Although this is the instruction read to the jury with the approval of the state at Petitioner's 2007 trial (T. at 275), in 2002, the Florida Legislature eliminated the fourth element as a requirement for a conviction for trafficking in cannabis.  Fla. Stat. § 893.101 (2006); Person v. State, 950 So. 2d 1270, 1272 n.1 (Fla. 2d DCA 2007).  Currently, a person charged under Chapter 893 who did not have knowledge of the illegality of his or her conduct may raise that fact as an affirmative defense.  See State v. Adkins, 96 So. 3d 412 (Fla. 2012).

house were marijuana (Doc. 1 at 40-41).  However, viewing the evidence presented by the state in the light most favorable to the state, the post-conviction court did not unreasonably conclude that Petitioner would not have prevailed on a motion for judgment of acquittal. See Jean v. State, 638 So. 2d 995, 996-97 (Fla. 4th DCA 1994) (concluding, in appeal of prosecution for trafficking in cocaine resulting in conviction for attempted possession of cocaine, that circumstantial evidence was sufficient to show defendant's dominion and control over cocaine in a non-residential duplex apartment with multiple persons present, where defendant was found sitting on a couch, the floor of the room was strewn with approximately 200 cocaine rocks, windows were barred and a grated metal interior door was padlocked, and the premises were ill-suited for casual social gatherings, so that State presented evidence inconsistent with the theory that defendant simply was a visitor).  Moreover, as discussed in Claim Six, supra, Petitioner cannot demonstrate prejudice because the state courts have already told us how this issue would have been resolved had Counsel made the motion for judgment of acquittal.  It would have been denied.

The state courts' conclusion that Petitioner cannot demonstrate prejudice from Counsel's failure to make a motion for judgment of acquittal was neither contrary to, nor based upon an unreasonable application of, Strickland.  Claim Seven is denied pursuant to 28 U.S.C. § 2254(d).

### g.   Claim Eight

Petitioner asserts that Counsel was ineffective for failing to request a jury instruction on the affirmative defense that he lacked knowledge of the illicit nature of the controlled substance in the grow-house (Doc. 1 at 42).   Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court conducted an evidentiary hearing (Ex. 20).   Afterwards, the post-conviction court denied the claim on the ground that Petitioner could not demonstrate Strickland prejudice:

> Defendant asserts that trial counsel was ineffective for failing to request, or object to the trial court's failure to give, affirmative defense instructions. Specifically, Defendant claims that he had the affirmative defense of lack of knowledge and that the State had the burden of disproving his defense, which they failed to do. At the evidentiary hearing, Defendant testified that trial counsel did not discuss defenses or affirmative defenses with him prior to trial. Defendant testified that his trial testimony included a lack of knowledge that the marijuana was in the house and that he did not know how it smelled or what it looked like.
>
> At the evidentiary hearing, [Counsel] testified that the defense's trial strategy was that Defendant was at the wrong place at the wrong time, not Defendant's lack of knowledge.   [Counsel] testified that he discussed the defense strategy with Defendant. [Counsel] testified that Defendant's testimony changed at trial from their previous discussions, and that this change in testimony was a surprise to him at the trial.   [Counsel] testified that Defendant's trial testimony that he lacked any knowledge of the marijuana or its illicit nature was an implausible defense based on the evidence introduced at

trial.   [Counsel] testified that the jury
returned a verdict against Defendant in two
minutes.

This Court finds trial counsel's recollection
and testimony of the facts regarding the
claims asserted by Defendant . . . to be far
more credible than Defendant's recollection
and testimony.  However, even assuming that
trial counsel was ineffective for failing to
request, or object to the trial court's
failure to give, affirmative defense
instructions, the Court finds that Defendant
has failed to demonstrate the deficient
performance prejudiced the defense within the
meaning of Strickland.

(Ex. 15 at 5-6).   Florida's Second District Court of Appeal

affirmed (Ex. 20).   A review of the record and applicable law

supports the state courts' adjudication of this claim.

At the evidentiary hearing, Counsel explained that he and

Petitioner developed a trial strategy based upon Petitioner's

statement that he had come to the house with friends from Miami and

was only going to be in the house for a few hours (Ex. 25 at 31).

Counsel believed that Petitioner's best chance for an acquittal was

"saying that he (Petitioner) was in the wrong place at the wrong

time." Id.  When asked whether he planned to present the affirmative

defense at trial of lack of knowledge that the plants in the house

were marijuana, Counsel answered:

COUNSEL:  No.

STATE:    Why is that?

A.        Again, I – I didn't think it was
          plausible and I had told him, Mr.
          Morera, this from day one that I
          don't believe that – considering

what was in that house, the condition of the house, that a jury would believe that that would be a plausible defense.

Q.    You had mentioned an overwhelming smell. Can you describe a bit what you mean to the extent of overwhelming smell coming from the house?

A.    Well, I believe there were two hundred plants if – if I'm correct. There were a lot of generators, a lot of lights, again, fertilizer. If you're in a smaller house with not much to absorb odor, I mean, odor is floating around the house as marijuana smell. I don't know how you wouldn't notice it.

Q.    Is that a distinctive smell?

A.    In my opinion, yes.

Q.    Based on your strategy at trial and he defendant's testimony that was elicited at trial, did you find a reasonable basis to request an affirmative defense instruction with regard to these charges?

A.    No.

(Ex. 25 at 33-34). Based on Counsel's testimony, found to be credible by the post-conviction court, his decision to forego the affirmative defense of lack of knowledge was based upon sound trial strategy. Given the overwhelming evidence that Petitioner knew he was in a marijuana grow-house, reasonable counsel could have chosen to pursue a "wrong place at the wrong time" defense strategy instead of attempting to make an incredible lack of knowledge argument. Likewise, given the evidence against Petitioner, he cannot

demonstrate prejudice from Counsel's failure to request an affirmative defense instruction. Finally, the jury was instructed, albeit erroneously, that in order to find Petitioner guilty, it must determine that he knew of the illicit nature of the marijuana plants in the house (T. at 275). An additional instruction was unnecessary.

Accordingly, Petitioner has satisfied neither prong of Strickland's ineffectiveness test, and Claim Eight is denied. 28 U.S.C. § 2254(d).

### h.    Claim Nine

Petitioner asserts that Counsel was ineffective for failing to request a "Defendant's Statements" cautionary jury instruction (Doc. 1 at 46). Specifically, he contends that his statements to law enforcement officers regarding consent to enter the grow-house, admission of ownership of the keys, and statements about his presence in the residence were sufficient to request the cautionary jury instruction. Id. Petitioner raised this claim in his Rule 3.850 motion, and it was denied by the post-conviction court on the ground that Petitioner had satisfied neither prong of Strickland (Ex. 15 at 6). The post-conviction court noted that during his testimony at trial, Petitioner generally denied making the statements that he now contends required a jury instruction and that "a request by trial counsel for the court to give cautionary jury instructions on statements made by Defendant to law enforcement officers or an objection by trial counsel to the trial court's failure to give such cautionary jury instructions, would have confounded the jury and

discredited Defendant's own trial testimony." Id. at 7.  Florida's Second District Court of Appeal affirmed (Ex. 20).  A review of the record supports the state courts' adjudication of this claim.

At trial, Investigator Rogers testified that Petitioner allowed the police into the grow-house and that he was read his Miranda[5] rights as soon as the police entered (T. at 188).  He testified that he spoke with Petitioner only "briefly . . . just to get his name." Id. at 199. He said that Petitioner did not want to speak with him and he had very little conversation with him. Id. at 199, 205.  He testified that Petitioner told him that the vehicle keys on the keyrign belonged to him. Id. at 204.  Investigator Gaydash testified that Petitioner told him that he was from Tampa, that he knew nobody in the neighborhood, and that he just found the door to the house open and came in to lay down. Id. at 217, 225.  Gaydash also testified that Petitioner admitted that the keys on his keyring belonged to him, but told him he didn't know why he had the keys to the house. Id. at 230.  At trial, Petitioner testified that he generally denied living in the house to the police and that he did not give the police permission to enter. Id. at 241.  He denied speaking with Investigator

---

[5] Miranda v. Arizona, 384 U.S. 436 (1966) (holding that a defendant's statements made in response to interrogation while in custody will be admissible at trial only if the prosecution can show that the defendant was informed of the right to consult with an attorney before and during questioning and of the right against self-incrimination before police questioning, and that the defendant not only understood these rights, but voluntarily waived them).

Gaydash at all. Id. at 242.  He testified that he told the police

that only the car keys on the keyring belonged to him. Id. at 243.

Given Petitioner's limited statements to the police, and given

that Petitioner denied speaking to Investigator Gaydash at all,

reasonable competent counsel could have determined that asking for

standard jury instruction 3.9(b)[6] would have merely confused the jury

and focused attention on the statements Petitioner allegedly made to

---

[6] Standard  Instruction  3.9(b),  "Defendant's  Statements"
reads:

> A statement claimed to have been made by the
> defendant outside of court has been placed
> before you. Such a statement should always be
> considered with caution and be weighed with
> great care to make certain it was freely and
> voluntarily made.
>
> Therefore, you must determine from the
> evidence that the defendant's alleged
> statement was knowingly, voluntarily, and
> freely made.
>
> In making this determination, you should
> consider the total circumstances, including
> but not limited to
>
> 1.  whether, when the defendant made the
>     statement, [he] [she] had been threatened
>     in order to get [him] [her] to make it,
>     and
>
> 2.  whether anyone had promised [him] [her]
>     anything in order to get [him] [her] to
>     make it.
>
> If you conclude the defendant's out of court
> statement was not freely and voluntarily made,
> you should disregard it.

Fla. Std. J.I. 3.9(b).

the police.   Moreover, given the evidence of Petitioner's guilt, he

has not demonstrated that, but for the omission of the jury

instruction, the result of his trial would have differed. Strickland,

468 U.S. at 694.   Accordingly, Petitioner has satisfied neither prong

of the Strickland ineffectiveness test, and Claim Nine is denied. 28

U.S.C. § 2254(d).

### i.   Claim Ten

Petitioner asserts that Counsel was ineffective for failing

to object and move for a mistrial in response to the State's

closing argument (Doc. 1 at 52-56).   Petitioner lists four pages

of statements that he believes were improper. Id.   Petitioner

raised this claim in his Rule 3.850 motion, and the post-conviction

court denied the claim as follows:

> The Florida Supreme Court has held that the
> "proper exercise of closing argument is to
> review the evidence and to explicate those
> inferences which may reasonable be drawn from
> the evidence." Bertolotti v. State, 476 So. 2d
> 130, 134 (Fla. 1985).   After careful review,
> it appears to this Court that the statements
> were conclusions "reasonably drawn" from the
> evidence.   Thus, there would have been no
> valid bases upon which counsel could have
> objected or moved for mistrial.

(Ex. 14 at 6).   The post-conviction court's rejection of this

claim was affirmed by Florida's Second District Court of Appeal

(Ex. 20).   After reviewing Petitioner's list of allegedly

objectionable comments, this Court concludes that the post-conviction

court's rejection of Claim Ten was not an unreasonable application

of Strickland nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court.

Under Florida law, wide latitude is afforded to counsel during closing arguments. See Breedlove v. State, 413 So.2d 1, 8 (Fla. 1982). Counsel's role in closing argument is to "assist the jury in analyzing, evaluating and applying the evidence." United States v. Pearson, 746 F.2d 787, 796 (11th Cir. 1984). While a prosecutor may not go beyond the evidence before the jury, he is not limited to a bare recitation of the facts. He may comment on the evidence, and "state his contention as to the conclusions that the jury should draw from the evidence." United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984).

Here, Petitioner takes issue with numerous prosecutor statements, which he characterizes as "misstating proper standards on burden of proof"; "improper vouching for guilt of defendant and veracity of State's case"; "improper argument of facts not in evidence"; "improper suggestion defense obligated to disprove evidence or prove innocence"; and "improper 'what you as the juror couldn't but know' arguments" (Doc. 1 at 52-56). However, the statements listed by Petitioner are instances of the prosecutor merely drawing inferences from the evidence presented and suggesting the conclusions that may be drawn by the jury. The Court has reviewed each of these statements in the context of the entire closing argument (T. at 256-63, 269-74) and concludes that the prosecutor's closing argument was within the parameters set forth in Florida and federal

law, and Counsel was not ineffective for failing to object to these statements. The prosecutor did not make any comment that could be seen as placing the state's credibility or prestige behind a witness, nor did the prosecutor suggest that there was additional, undisclosed evidence that was indicative of Petitioner's guilt.  That Petitioner does not like the way the state characterized or interpreted the evidence does not make the statements improper.  Because the comments were not improper, reasonable competent defense counsel could have chosen not to object to the closing argument.

Even assuming *arguendo* deficient performance by Counsel, Petitioner has not shown resulting prejudice. The record reflects that the trial judge instructed the jury that it must reach its verdict solely from the evidence set forth from witness testimony and exhibits (T at 287, 288); Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001) (citations omitted) ("jurors are presumed to follow the court's instructions").  The attorneys were not witnesses in the case, and their statements and arguments were not evidence. See Hammond v. Hall, 586 F.3d 1289, 1334 (11th Cir. 2009).  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have differed if his lawyer had objected to each of the prosecutor's allegedly improper statements.

Claim Ten fails to satisfy either prong of Strickland, and is denied pursuant to 28 U.S.C. § 2254(d).

### j.   Cumulative Error

Petitioner asserts that Counsel's multiple errors resulted in prejudice (Doc. 1 at 24 n.1).   This Court need not determine whether, under current Supreme Court precedent, cumulative error claims can ever succeed in showing that the state court's adjudication on the merits was contrary to or an unreasonable application of clearly established federal law.   Nor must the Court determine whether this claim has been exhausted. 28 U.S.C. § 2254 (b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").   Petitioner has not shown an error of constitutional dimension with respect to any federal habeas claim.   Therefore, he cannot show that the cumulative effect of the alleged errors deprived him of fundamental fairness in the state criminal proceedings. See Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012)(refusing to decide whether post-AEDPA claims of cumulative error may ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law, but holding that petitioner's claim of cumulative error was without merit because none of his individual claims of error or prejudice had any merit); Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009)(noting absence of Supreme Court precedent applying cumulative error doctrine to

claims of ineffective assistance of counsel, but holding that the petitioner's cumulative error argument lacked merit because he did not establish prejudice or the collective effect of counsel's error on the trial); Hill v. Sec'y, Fla. Dep't of Corr., 578 F. App'x 805 (11th Cir. 2014)(same).  Petitioner is not entitled to federal habeas relief.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.  Certificate of Appealability[7]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282

---

[7] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Id. As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

(2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El, 537 U.S. at 335–36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.    The Florida Attorney General is **DISMISSED** as a named Respondent.

2.    The 28 U.S.C. § 2254 petition for habeas corpus relief filed by Neury Rivero Morera (Doc. 1) is **DENIED**, and this case is dismissed with prejudice.

3.    Petitioner is **DENIED** a certificate of appealability.

4.    The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___14th___ day of February, 2017.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Neury Rivero Morera
Counsel of Record